UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

REVCONTENT, LLC

                                                                         Case No:

      Plaintiff,

v.

IBT MEDIA, INC. f/k/a
NEWSWEEK MEDIA GROUP, INC.,
NEWSWEEK DIGITAL LLC,
NEWSWEEK PUBLISHING LLC,
NEWSWEEK LLC, and DEV PRAGAD,

      Defendants.

                                             /

## COMPLAINT

      Plaintiff, Revcontent, LLC ("Revcontent") sues Defendants IBT Media, Inc. f/k/a Newsweek Media Group, Inc., Newsweek Digital LLC, Newsweek Publishing LLC, Newsweek LLC, and Dev Pragad and alleges as follows:

## Overview of the Case

      1.     This is an action for specific performance, breach of contract, unjust enrichment, fraudulent transfer, alter ego, open account, and an equitable accounting.

      2.     Since its inception in 1933, Newsweek has been a widely-distributed weekly news magazine. More recently, Newsweek, like most publications, has used its brand recognition and market share to attract visitors to its website, newsweek.com.

      3.     Revcontent is in the digital advertising industry. As described below, Revcontent contracted with IBT Media, Inc. f/k/a Newsweek Media Group, Inc. ("IBT Media") for the exclusive right to place native advertisements and content recommendations on newsweek.com. However, after the Manhattan District Attorney's office raided IBT Media's offices as part of a

1

long-term fraud probe, resulting in multiple indictments and eventual guilty pleas from IBT Media

and its CEO, Newsweek "restructured" its corporate form. IBT Media purportedly no longer owns

and operates the most valuable subject matter of its contract with Revcontent—newsweek.com.

The new owners of newsweek.com refuse to honor Revcontent's exclusive rights, while, at the

same time, IBT Media and its successors refuse to refund $800,000 previously advanced by

Revcontent.

4.      IBT Media is liable for a clear breach of contract. The entities formed by IBT

Media's former CEO to take over newsweek.com are liable as sub-publishers, successors, assigns,

the recipients of a fraudulent transfer, and/or the alter egos of IBT Media. These parties should be

ordered to place Revcontent's advertising services back onto newsweek.com so that Revcontent

may realize the benefits of its bargain, including recoupment of its significant cash advance, the

profits to which it is entitled, and the non-monetary benefits of the exposure that comes with being

the exclusive content recommendation provider on a high-profile website. Alternatively,

Revcontent is entitled to a money judgment against all Defendants.

## Parties, Jurisdiction, and Venue

5.      Revcontent is a Florida limited liability company with its principal place of

business in Sarasota County, Florida. The sole member of Revcontent is Revcontent Holdings,

Inc., which is a Delaware corporation with its principal place of business in Sarasota, Florida.

Accordingly, for diversity jurisdiction purposes, Revcontent is a citizen of the states of Florida and

Delaware.

6.      IBT Media is a New York corporation with its principal place of business in

New York, New York and, thus, a citizen of the state of New York. This Court has jurisdiction

over IBT Media: (a) pursuant to section 48.193(1)(a)(1), Florida Statutes, because it has committed

4839-7203-3487, v. 1

a tortious act within this state; (b) pursuant to section 48.193(1)(a)(7), Florida Statutes, because it has breached a contract in this state by failing to perform acts required by the contract to be performed in this state; and (c) pursuant to section 48.193(2) because it is engaged in substantial and not isolated activity within Florida. Further, IBT Media has submitted to the jurisdiction of this Court pursuant to its contracts with Revcontent.

7.      Newsweek Digital LLC ("Newsweek Digital") is a New York limited liability company with its principal place of business in New York, New York. Newsweek Digital has filed disclosures in federal courts stating that it "is a privately-owned company with no parent corporation." The membership of Newsweek Digital is not publicly available; however, upon information and belief, none of its members are citizens of Florida or Delaware. This Court has jurisdiction over Newsweek Digital: (a) pursuant to section 48.193(1)(a)(1), Florida Statutes, because it has committed a tortious act within this state; (b) pursuant to section 48.193(1)(a)(7), Florida Statutes, because it has breached a contract in this state by failing to perform acts required by the contract to be performed in this state; and (c) pursuant to section 48.193(2) because it is engaged in substantial and not isolated activity within Florida. Further, Newsweek Digital has submitted to the jurisdiction of this Court pursuant to its contracts with Revcontent.

8.      Newsweek Publishing LLC ("Newsweek Publishing") is a New York limited liability company with its principal place of business in New York, New York. The membership of Newsweek Publishing is not publicly available; however, upon information and belief, none of its members are citizens of Florida or Delaware. This Court has jurisdiction over Newsweek Publishing: (a) pursuant to section 48.193(1)(a)(1), Florida Statutes, because it has committed a tortious act within this state; (b) pursuant to section 48.193(2) because it is engaged in substantial and not isolated activity within Florida.

3

9.     Newsweek LLC is a New York limited liability company with its principal place of business in New York, New York. Upon information and belief, the sole member of Newsweek LLC is IBT Media. Thus, Newsweek LLC is a citizen of the state of New York. This Court has jurisdiction over Newsweek LLC: (a) pursuant to section 48.193(1)(a)(1), Florida Statutes, because it has committed a tortious act within this state; (b) pursuant to section 48.193(2) because it is engaged in substantial and not isolated activity within Florida.

10.     Dev Pragad ("Pragad") is the former CEO of IBT Media and current controlling officer, shareholder, and/or member of Newsweek Digital and Newsweek Publishing. Pragad is a citizen of New York. This Court has jurisdiction over Pragad (a) pursuant to section 48.193(1)(a)(1), Florida Statutes, because he has committed a tortious act within this state; (b) pursuant to section 48.193(2) because he is engaged in substantial and not isolated activity within Florida.

11.     Specifically, Pragad orchestrated the restructuring of IBT Media and the formation of the Newsweek Digital and Newsweek Publishing to perpetrate a fraud on Revcontent. Pragad sent numerous material misrepresentations into Florida in the course of the fraud. Pragad knew that the recipients of his misrepresentations, including former Revcontent CEO John Lemp ("Lemp") were located in Florida and would access and rely on the communications in Florida. Pragad also orchestrated a fraudulent transfer which harmed Revcontent in Florida. As described below, Pragad traveled to Florida in the summer of 2017 to negotiate and finalize an agreement with Revcontent and offered to travel to Florida on other occasions in attempts to obtain cash advances from Revcontent.

4839-7203-3487, v. 1

12.     This Court has subject matter diversity jurisdiction under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest, costs, and attorneys' fees.

13.     Venue is proper in the Middle District of Florida pursuant to 28 U.S.C.  § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district. Further, the parties agreed to venue in this Court pursuant to their contracts.

<u>**General Allegations**</u>

14.     Revcontent is a native advertising and content marketing platform. Revcontent acts as a marketplace for advertisers who desire to reach audiences on the internet and publishers who desire to generate revenue by placing content recommendations or advertisements on their websites. Often, native advertisements are placed on the bottom or sides of webpages under headings such as "Promoted" or "Sponsored" content.

15.     Because Revcontent earns revenue by directing users of a publisher's website to advertisers' webpages, the popularity and quality of its publisher websites is paramount. Any party with a website can be a publisher, but a company with a recognizable brand and high-traffic website is Revcontent's ideal contractual partner.

<u>**The Parties' Contracts**</u>

16.     On or about July 16, 2015, Revcontent and IBT Media agreed to the Revcontent entered into a Revcontent Exclusive Publisher Agreement & Order Form (the "First Agreement"), a true, complete, and authentic copy of which is attached as **Exhibit A**. IBT Media's then-CEO Etienne Uzac ("Uzac") executed the First Agreement on behalf of IBT Media.

17.     The First Agreement provided Revcontent with the exclusive right to place content recommendations and photo-text advertisement platforms (the "Services") on IBT Media's

5

website, newsweek.com. In exchange, Revcontent agreed to pay IBT Media a certain percentage of the net revenue generated by the Services, subject to certain minimum requirements and adjustments.

18.     Revcontent secured its payments to IBT Media by delivering a prepaid deposit to IBT Media in the amount of $1,000,000.00 (the "Prepayment"). Then, as Revcontent's Services generated revenue, Revcontent would credit IBT Media with its share of the revenue by reducing the Prepayment. The initial term of First Agreement was for one year or until the Prepayment was exhausted, whichever was later.

19.     During the initial term of the First Agreement, on February 2, 2016, Revcontent and IBT Media entered into another Revcontent Exclusive Publisher Agreement & Order Form (the "Second Agreement"), a true, complete, and authentic copy of which is attached as **Exhibit B**. Uzac executed the Second Agreement on behalf of IBT Media.

20.     Pursuant to the Second Agreement, Revcontent provided an additional Prepayment of $200,000.00. The initial term of the Second Agreement was for one year or until the Prepayment was exhausted, whichever was later.

21.     During the initial term of the Second Agreement, on September 18, 2017, Revcontent and IBT Media (when it was known as Newsweek Media Group, Inc.), entered into another Revcontent Exclusive Publisher Agreement and Order Form (the "Third Agreement"). A true, complete, and authentic copy of the Third Agreement is attached as **Exhibit C**. Uzac executed the Third Agreement on behalf of IBT Media. The Third Agreement supersedes the First and Second Agreements and incorporates Revcontent's Standard Publisher Terms and Conditions ("Publisher Terms"). A true, complete, and authentic copy of the Publisher Terms is attached as **Exhibit D**.

4839-7203-3487, v. 1

22.     Pursuant to the Third Agreement, the parties acknowledged the current Prepayment balance of $1,250,000.00 and agreed that Revcontent would provide an additional Prepayment of $2,000,000.00.

23.     The Third Agreement provides that Revcontent shall be the exclusive provider of Services on the following websites: newsweek.com; idigitaltimes.com; player.one; ibtimes.com; medicaldaily.com; latintimes.com; Europe.newsweek.com; and ibtimes.com.au (collectively, the "Websites"). In addition, the website ibtimes.co.uk was to be included as one of the Websites in the Third Agreement upon the expiration of contractual obligations of ibtimes.co.uk to a third party. Although each of the Websites provides some value, newsweek.com is by far the most valuable affiliation for Revcontent because of its brand, exposure, and traffic.

24.     The initial term of the Third Agreement is three years or until the Prepayment is exhausted, whichever is later. To date, the Prepayment has not been exhausted.

25.     In the Third Agreement, IBT Media represented that it owns all intellectual property rights in the Websites.

26.     On January 26, 2018, Revcontent and IBT Media (when it was known as Newsweek Media Group, Inc.) entered into the First Amendment to Revcontent Exclusive Publisher Agreement & Order Form (the "First Amendment"), which amends the Third Agreement. A true, complete, and authentic copy of the First Amendment is attached as **Exhibit E**. IBT Media's then-CEO Pragad executed the First Amendment on behalf of IBT Media.

27.     Pursuant to the First Amendment, the parties acknowledged the current Prepayment balance of $1,384,941.16 and agreed that Revcontent would provide an additional Prepayment of $1,300,000.00.

4839-7203-3487, v. 1

Case 8:20-cv-02508   Document 1   Filed 10/26/20   Page 8 of 22 PageID 8

28.    On May 10, 2018, Revcontent and IBT Media (when it was known as Newsweek Media Group, Inc.) entered into the Second Amendment to Revcontent Exclusive Publisher Agreement & Order Form (the "Second Amendment"), which also amends the Third Agreement. A true, complete, and authentic copy of the Second Amendment is attached as **Exhibit F**. Pragad executed the Second Amendment on behalf of IBT Media.

29.    Pursuant to the Second Amendment, the parties acknowledged the Prepayment balance as of April 30, 2018 to be $2,104,802.89 and agreed that Revcontent would provide an additional pre-paid deposit of $250,000.00 (the "May 2018 Prepayment Replenishment"), which was to be kept separate from and not commingled with the remaining Prepayment.

30.    The Second Amendment provides Revcontent with additional advertisement placement rights for desktop and mobile traffic on the Websites.  Revcontent would credit IBT Media with its share of the revenue generated by these additional placements by reducing the May 2018 Prepayment Replenishment.

31.    All terms of the Third Agreement that were not specifically amended by the First Amendment or Second Amendment remain in full force and effect. Together, the Third Agreement, Publisher Terms, First Amendment, and Second Amendment shall be referred to as the "Newsweek Publisher Agreement."

32.    Revcontent and IBT Media operated under the terms of the Newsweek Publisher Agreement. Revcontent provided the required Prepayments and IBT Media placed Revcontent's Services on newsweek.com and other applicable Websites.

### The Defendants' Fraudulent Conduct

33.    According to the Grand Jury Indictment filed in *The People of the State of New York v. William Anderson, Etienne Uzac, Christian Media Corporation, IBT Media Inc. (a.k.a.*

8

*Newsweek Media Group), and Oikos Networks*, during the period of March 2015 to October 2018, Uzac and IBT Media were "engaged in a scheme constituting a systematic ongoing course of conduct with intent to defraud more than one person and to obtain property from more than one person by false and fraudulent pretenses…"

34.     Upon information and belief, IBT Media was in a desperate financial state during this period of time. IBT Media renegotiated and amended its contracts with Revcontent to obtain additional Prepayments from Revcontent to meet the operating needs of the company and/or to pay other creditors.

35.     During the period of its fraudulent scheme, Defendants consistently disregarded the corporate form. For example, IBT Media, through Uzac, transferred large amounts of cash received from lenders to Newsweek LLC to obtain additional loans based on fraudulent financial statements. The companies used loan proceeds to make payments on previously-received financing.

36.     Defendants' fraud and disregard of corporate formalities extended to its contractual relationships with digital advertising companies.

37.     On January 26, 2016, Uzac introduced Pragad to Lemp as the "Managing Director of IBT UK." Pragad then told Lemp: "We run the UK and EMEA [Europe, Middle East, and Africa] business of IBT & Newsweek." Pragad and Revcontent almost immediately began negotiating a deal to place Revcontent's Services on other websites which were purportedly part of the UK and EMEA business of IBT and Newsweek, specifically, "ibt.co.uk, IBT India, and Newsweek Europe."

38.     From the beginning, Pragad and his team requested a large prepayment as part of the new proposed deal. They also informed Revcontent that they had a current agreement with

4839-7203-3487, v. 1

Revcontent's competitor, Taboola, Inc. ("Taboola"), and that a substantial portion of the prepayment from Revcontent would be used to pay back a similar up-front payment they had received from Taboola.

39.     Pragad's negotiations with Revcontent resulted in the execution of the Third Agreement, which was agreed upon in July and effective in September 2017 and which included a significant Prepayment to IBT Media.

40.     However, Defendants did not pay back Taboola as they represented, leading to multiple legal disputes between Taboola, IBT Media, and Newsweek LLC.

41.     In January 2018, just prior to the execution of the First Amendment, Pragad represented to Lemp that IBT Media's "Q4 results were the best ever in our history," that the company was in a strong financial position, and that Revcontent's assistance would "help advance the growth of Newsweek substantially." In reliance on these representations, Revcontent executed the First Amendment and advanced the significant additional Prepayment.

42.     Shortly before the Second Amendment, on April 17, 2018, IBT Media and Newsweek LLC entered into a settlement agreement with Taboola which permitted IBT Media and Newsweek LLC to pay Taboola $250,000.00 by May 30, 2018 to fully resolve their ongoing legal disputes with Taboola.

43.     Shortly thereafter, Pragad again reached out to Revcontent and requested an additional prepayment in the amount of $250,000.00—the same amount that could have satisfied the settlement agreement with Taboola. Pragad said that he needed the $250,000.00 prepayment and "really can't accept anything less."

4839-7203-3487, v. 1

44.     Upon information and belief, IBT Media and Newsweek LLC requested the exact amount of the Taboola settlement as the May 2018 Prepayment Replenishment to pay the Taboola settlement.

45.     During the forthcoming negotiations of the Second Amendment, Pragad consistently referred to newsweek.com as his company's "most premium brand," and "the goose that's laying the golden eggs…for all of us" and represented that Revcontent's Services would remain on newsweek.com consistent with the operative Newsweek Publisher Agreement.

46.     On August 31, 2018, IBT Media and Newsweek LLC breached their settlement agreement with Taboola by failing to make a timely payment. As a result, on September 4, 2018, pursuant to the terms of the Settlement Agreement, Taboola filed an Affidavit of Confession of Judgment, which Pragad executed on behalf of IBT Media (when it was known as Newsweek Media Group, Inc.) and Newsweek LLC.

47.     On September 7, 2018, IBT Media changed its name from Newsweek Media Group, Inc. back to IBT Media Group, Inc.

48.     On September 11, 2018, based on the Affidavit of Confession of Judgment, the Supreme Court of the State of New York, County of New York entered a Judgment against IBT Media and Newsweek LLC in the amount of $634,561.53 (the "Judgment").

49.     On September 14, 2018, Pragad filed an Affidavit in Support of an order to show cause filed by IBT Media and Newsweek LLC seeking to vacate the Judgment. Pragad identified himself as the President of IBT Media.

50.     That same day, on September 14, 2018, Pragad formed Newsweek Digital and Newsweek Publishing. Pragad then announced on newsweek.com that "Newsweek has become an independent company from IBT Media" and that "As of September 14th 2018 the Newsweek

brand will be operating as a stand-alone separate entity under the leadership of CEO Dev Pragad"
and that "The remaining brands, including International Business Times, Medical Daily, Latin
Times and Player One, will be operated separately under IBT Media Inc, with Johnathan Davis as
CEO."

51.     In other words, Pragad supposedly unilaterally transferred IBT Media's paramount
asset, newsweek.com, to Newsweek Digital and/or Newsweek Publishing, while leaving the
"remaining brands" with the entity saddled with debt, including the Judgment and obligations to
Revcontent. Indeed, Pragad later informed Lemp that he needed cash "to stabilize Newsweek
outside IBT and cut all the bad debt and bad management and put Newsweek on a robust path."

52.     Prior to the restructuring of these entities, the copyright notice on newsweek.com
identified Newsweek LLC (the sole member of IBT Media) as the owner of the copyright(s)
claimed on the website. After the restructuring, the copyright notice identified Newsweek Digital
as the copyright(s) owner. Accordingly, upon information and belief, Newsweek Digital currently
owns   newsweek.com.   Newsweek   Publishing   operates   newsweek.com,   according   to
representations made by Pragad.

53.     In late November 2018, Pragad traveled to Florida to discuss the restructuring with
Revcontent. Pragad represented to Lemp that Newsweek Digital and Newsweek Publishing would
honor Revcontent as the exclusive content recommendation partner on newsweek.com.

54.     Notably, as described below, these new Newsweek entities were already
contractually bound to honor Revcontent's exclusivity. Yet, despite Pragad's representations and
their contractual obligations, Newsweek Digital and Newsweek Publishing refused to accept
responsibility for the Prepayment.

4839-7203-3487, v. 1

55.     On April 11, 2019, the Supreme Court of the State of New York, Appellate Division, affirmed the Judgment. Upon information and belief, the Judgment remains at least partially unsatisfied.

56.     On October 28, 2019, Revcontent discovered that Defendants had been geofencing Revcontent's geographic location such that Revcontent's Services appeared on newsweek.com displayed in Revcontent's location (Florida), even though Defendants were using one of Revcontent's competitor's Services on newsweek.com in all other locations. The purpose of this fraudulent technique was to hide the Defendants' breaches of the Newsweek Publisher Agreement from Revcontent. Revcontent only discovered this scheme when one of its employees visited newsweek.com while in Colorado and noticed that Revcontent's competitor's Services were being displayed on the website. A true, complete, and authentic copy of a screen shot of newsweek.com from October 28, 2019 is attached as **Exhibit G**.

57.     Revcontent notified Pragad when Revcontent became aware of the fraudulent conduct and the material breaches of the Newsweek Publisher Agreement. Defendants refused to alter their conduct and refused to cure their breaches.

**Newsweek Digital and Newsweek Publishing
are Bound by the Newsweek Publisher Agreement**

58.     After the restructuring, Newsweek Digital and Newsweek Publishing ratified the Newsweek Publisher Agreement by continuing to perform under the agreement. The Websites which purportedly continued to be operated by IBT Media and the flagship Website of "the Newsweek brand," newsweek.com, all continued to display Revcontent's Services after the restructuring.

59.     Section 6 of the Publisher Terms provides, in relevant part:

Publisher may desire to use it business partners and/or associates to fulfill the obligations or exercise the rights under a particular Program. For the purposes of this section, any of Publisher's business partners or associates that participate in or perform any activities on behalf of Publisher under the Agreement shall be considered to be a "Sub-Publisher." ….. Sub-Publishers…must comply with all the terms and conditions that are applicable to Publisher under the Agreement and any and all other applicable terms required by Revcontent.

60.     Because Newsweek Digital and Newsweek Publishing participated in and performed activities under the Newsweek Publisher Agreement by using Revcontent's services on newsweek.com after the corporate restructuring, these entities are liable to Revcontent and must comply with the terms of the Newsweek Publisher Agreement.

61.     Further, Section 17 of the Publisher Terms provides that the Newsweek Publisher Agreement is binding on IBT Media's successors and assigns. Newsweek Digital and Newsweek Publishing are successors and/or assigns of the Newsweek Publisher Agreement and newsweek.com.

62.     Defendants have never provided Revcontent with a written notice of termination or default of the Newsweek Publisher Agreement.

63.     All conditions precedent to the bringing and maintenance of this lawsuit have been performed, have occurred, or have been waived.

64.     Revcontent has retained the undersigned counsel and is obligated to pay them a reasonable fee for their services.

### Count I:  Specific Performance
**(vs. IBT Media, Newsweek LLC, Newsweek Digital, and Newsweek Publishing)**

65.     Revcontent realleges and incorporates Paragraphs 1 through 64.

14

66.     The Newsweek Publisher Agreement is a valid and enforceable contract. The terms of the Newsweek Publisher Agreement are clear, definite, certain, and complete in all of its essential terms.

67.     Pursuant to the Newsweek Publisher Agreement, IBT Media was required to display Revcontent's Services on the Websites until the Prepayment and the May 2018 Prepayment Replenishment are exhausted.

68.     Pursuant to the Publisher Terms, the Newsweek Publisher Agreement is binding on IBT Media's business partners and/or associates used to fulfill the obligations of the Newsweek Publisher Agreement, including Newsweek LLC, Newsweek Digital, and Newsweek Publishing. Newsweek Digital and Newsweek Publishing ratified the Newsweek Publisher Agreement and became parties to the agreement by partial performance by placing Revcontent's Services on newsweek.com and accepting the benefits of the agreement.

69.     IBT Media, Newsweek LLC, Newsweek Digital, and Newsweek Publishing removed Revcontent's Services from newsweek.com without notice and without justification, which constitutes a material breach of the Newsweek Publisher Agreement.

70.     IBT Media, Newsweek LLC, Newsweek Digital, and Newsweek Publishing placed Revcontent's competitor's Services on newsweek.com, which constitutes a material breach of the Newsweek Publisher Agreement.

71.     IBT Media, Newsweek LLC, Newsweek Digital, and Newsweek Publishing failed to segregate the Prepayment and May 2018 Prepayment Replenishment, which constitutes a material breach of the Newsweek Publisher Agreement.

72.     IBT Media, Newsweek LLC, Newsweek Digital, and Newsweek Publishing failed to return the Prepayment and May 2018 Prepayment Replenishment, which constitutes a material breach of the Newsweek Publisher Agreement.

73.     Revcontent has performed its obligations under the Newsweek Publisher Agreement and is ready, willing, and able to perform the remainder of its obligations should the Court order specific performance of the contract.

74.     Revcontent does not have an adequate remedy at law because of the unique nature of newsweek.com, including, but not limited to, the exposure that comes with being the exclusive content recommendation provider on the website.

75.     As a direct and proximate result of IBT Media's, Newsweek LLC's, Newsweek Digital's, and Newsweek Publishing's material breaches of the Newsweek Publisher Agreement, Revcontent has been damaged.

WHEREFORE, Plaintiff, Revcontent, LLC, requests a judgment against IBT Media, Newsweek LLC, Newsweek Digital LLC, and Newsweek Publishing LLC, jointly and severally, for specific performance and that IBT Media, Newsweek LLC, Newsweek Digital LLC, and Newsweek Publishing LLC be required to perform the Newsweek Publisher Agreement, for damages incident to the specific performance, attorneys' fees pursuant to Section 6 of the Publisher Terms, interest, costs, and for such further relief as the Court deems just and proper.

## Count II: Breach of Contract
### (vs. IBT Media, Newsweek LLC, Newsweek Digital, and Newsweek Publishing)

76.     Revcontent realleges and incorporates Paragraphs 1 through 64.

77.     The Newsweek Publisher Agreement is a valid and enforceable contract. The terms of the Newsweek Publisher Agreement are clear, definite, certain, and complete in all of its essential terms.

16

4839-7203-3487, v. 1

78.   Pursuant to the Newsweek Publisher Agreement, IBT Media was required to display Revcontent's Services on the Websites until the Prepayment and the May 2018 Prepayment Replenishment are exhausted.

79.   Pursuant to the Publisher Terms, the Newsweek Publisher Agreement is binding on IBT Media's business partners and/or associates used to fulfill the obligations of the Newsweek Publisher Agreement, including Newsweek LLC, Newsweek Digital, and Newsweek Publishing. Newsweek Digital and Newsweek Publishing ratified the Newsweek Publisher Agreement and became parties to the agreement by partial performance by placing Revcontent's Services on newsweek.com and accepting the benefits of the agreement.

80.   IBT Media, Newsweek LLC, Newsweek Digital, and Newsweek Publishing removed Revcontent's Services from newsweek.com without notice and without justification, which constitutes a material breach of the Newsweek Publisher Agreement.

81.   IBT Media, Newsweek LLC, Newsweek Digital, and Newsweek Publishing placed Revcontent's competitor's Services on newsweek.com, which constitutes a material breach of the Newsweek Publisher Agreement.

82.   IBT Media, Newsweek LLC, Newsweek Digital, and Newsweek Publishing failed to segregate the Prepayment and May 2018 Prepayment Replenishment, which constitutes a material breach of the Newsweek Publisher Agreement.

83.   IBT Media, Newsweek LLC, Newsweek Digital, and Newsweek Publishing failed to return the Prepayment and May 2018 Prepayment Replenishment, which constitutes a material breach of the Newsweek Publisher Agreement.

84.   Revcontent has performed its obligations under the Newsweek Publisher Agreement.

4839-7203-3487, v. 1

85.     As a direct and proximate result of IBT Media's, Newsweek LLC's, Newsweek Digital's, and Newsweek Publishing's material breaches of the Newsweek Publisher Agreement, Revcontent has been damaged.

WHEREFORE, Plaintiff, Revcontent, LLC, requests a judgment against IBT Media, Newsweek LLC, Newsweek Digital LLC, and Newsweek Publishing LLC, jointly and severally, for damages, attorneys' fees pursuant to Section 6 of the Publisher Terms, interest, costs, and such further relief as the Court deems just and proper.

### Count III:  Unjust Enrichment
**(vs. IBT Media, Newsweek LLC, Newsweek Digital, and Newsweek Publishing)**

86.     Revcontent realleges and incorporates Paragraphs 1 through 64.

87.     Revcontent conferred a direct benefit on IBT Media, Newsweek LLC, Newsweek Digital, and Newsweek Publishing by advancing the Prepayment.

88.     IBT Media, Newsweek LLC, Newsweek Digital, and Newsweek Publishing have knowledge of and have voluntarily accepted the benefit conferred.

89.     The circumstances are such that it would be inequitable for IBT Media, Newsweek LLC, Newsweek Digital, and Newsweek Publishing to retain the benefit without returning the full value of the benefit to Revcontent.

WHEREFORE, Plaintiff, Revcontent, LLC, requests a judgment against IBT Media, Newsweek LLC, Newsweek Digital LLC, and Newsweek Publishing LLC, jointly and severally, for damages, attorneys' fees pursuant to Section 6 of the Publisher Terms, interest, costs, and such further relief as the Court deems just and proper.

### Count IV:  Fraudulent Transfer in Violation of Section 726.106, Florida Statutes
**(vs. all Defendants)**

90.     Revcontent realleges and incorporates Paragraphs 1 through 64.

18

91.     As of the date of the formation of Newsweek Digital and Newsweek Publishing and the "restructuring" of IBT Media and the Newsweek entities, Revcontent was a creditor of IBT Media and its Sub-Publishers, successors, and assigns.

92.     As part of the restructuring, IBT Media transferred newsweek.com to Newsweek Digital and/or Newsweek Publishing.

93.     The transfer was made with the intent to hinder, delay, or defraud Revcontent.

94.     The transfer was made to an insider.

95.     IBT Media, upon information and belief, did not receive fair value in exchange for newsweek.com.

96.     The transfer left IBT Media unable to perform under the Newsweek Publisher Agreement, which required control of newsweek.com, and left IBT Media unable to pay the amounts it owes Revcontent.

97.     Pragad orchestrated and directed the transfer and was in a conflicted position on both sides of the transaction.

98.     As a direct and proximate cause of the fraudulent transfer, Revcontent has been damaged.

WHEREFORE, Plaintiff, Revcontent, LLC, requests a judgment against IBT Media, Newsweek LLC, Newsweek Digital LLC, Newsweek Publishing LLC, and Dev Pragad, jointly and severally, for an avoidance of the fraudulent transfer, an attachment against newsweek.com, an injunction against the further disposition of newsweek.com, damages, interest, costs, and for such further relief as the Court deems just and proper.

### **Count V:  Alter Ego**
**(vs. all Defendants)**

99.     Revcontent realleges and incorporates Paragraphs 1 through 64.

19

100.    Defendants knew that IBT Media was obligated to perform under the Newsweek Publisher Agreement. Yet, Pragad orchestrated a transfer of some of IBT Media's assets and obligations by virtue of transferring the ownership and operation of newsweek.com to Newsweek Digital and/or Newsweek Publishing, all without notice to Revcontent.

101.    Newsweek Digital and Newsweek Publishing were created to mislead or defraud Revcontent and other creditors.

102.    When Revcontent notified Defendants of the material breaches of the Newsweek Publisher Agreement, which had been hidden by the fraudulent geofencing conduct, Pragad informed Revcontent that he and the new Newsweek entities—Newsweek Digital and Newsweek Publishing—were not responsible for returning the Prepayment and May 2018 Prepayment Replenishment to Revcontent.

103.    Accordingly, Defendants have misused the corporate form for the purpose of perpetrating a fraud on Revcontent and avoiding their liabilities to Revcontent.

104.    Defendants were in fact alter egos of each other. Newsweek Digital and Newsweek Publishing have been used to blur the distinction between IBT Media, Newsweek LLC, Newsweek Digital, Newsweek Publishing, Pragad, and the ownership and operation of newsweek.com.

105.    Pragad, as the former CEO and President of IBT Media and the controlling owner and officer of Newsweek Digital and Newsweek Publishing, has dominated and controlled these entities to the extent that the entities do not have independent corporate existence.

106.    As a direct and proximate cause of the fraudulent and improper use of IBT Media, Newsweek LLC, Newsweek Digital, and Newsweek Publishing, Revcontent has been damaged.

WHEREFORE, Plaintiff, Revcontent, LLC, requests a judgment against IBT Media, Newsweek LLC, Newsweek Digital LLC, Newsweek Publishing LLC, and Dev Pragad, jointly

4839-7203-3487, v. 1

and severally, for damages, interest, costs, and such further relief as the Court deems just and proper.

**Count VI:  Open Account / Account Stated**
**(vs. IBT Media)**

107.    Revcontent realleges and incorporates Paragraphs 1 through 64.

108.    Pursuant to the Newsweek Publisher Agreement, Revcontent advanced the Prepayment and May 2018 Prepayment Replenishment to IBT Media.

109.    During the course of IBT Media's performance under the Newsweek Publisher Agreement, Revcontent reduced the balance of the Prepayment and May 2018 Prepayment Replenishment.

110.    When IBT Media ceased performing under the Newsweek Publisher Agreement, the outstanding balance of the Prepayment and May 2018 Prepayment Replenishment was $799,830.43. A true, complete, and authentic copy of the ledger demonstrating the open account is attached as **Exhibit H**.

111.    The Third Agreement provides that, "in the event that this Agreement is terminated by either party for any reason, or in the event that Publisher violates the terms of the Exclusivity described above during the Term, Publisher shall immediately refund 100% of the then-outstanding remaining the [sic] balance of the Prepayment to Revcontent."

112.    IBT Media has acknowledged and never contested the balance of the Prepayment and May 2018 Prepayment Replenishment.

113.    Despite demands from Revcontent, IBT Media has refused to refund the Prepayment and May 2018 Prepayment Replenishment to Revcontent.

WHEREFORE, Plaintiff, Revcontent, LLC, requests a judgment against IBT Media for $799,830.43, plus interest, costs, and such further relief as the Court deems just and proper.

21

## Count VII:  Accounting
### (vs. IBT Media, Newsweek LLC, Newsweek Digital, and Newsweek Publishing)

114.   Revcontent realleges and incorporates Paragraphs 1 through 64.

115.   Section 23 of the Publisher Terms provides:

> You agree that Revcontent may require a financial accounting and
> inspection of Your books and records including, but not limited to,
> access to Your computer databases, in order to verify and
> corroborate financial information regarding the relationship
> established hereunder. You hereby authorize Revcontent to obtain
> credit reports regarding Your business and to require You to provide
> it with reasonable information regarding your financial position.

116.   In addition, the circumstances surrounding the Newsweek Publisher Agreement and the restructuring of IBT Media and the formation of Newsweek Digital and Newsweek Publishing involve extensive and complicated accounts.

117.   Revcontent's remedy at law is not as full, adequate, or expeditious as it is in equity.

WHEREFORE, Plaintiff, Revcontent, LLC, requests a judgment against IBT Media, Newsweek LLC, Newsweek Digital, and Newsweek Publishing for an equitable accounting and such further relief as the Court deems just and proper.

*/s/ Brad F. Barrios*
Brad F. Barrios – FBN 035293
Trial Counsel
E-mail: bbarrios@bajocuva.com
Anthony J. Severino – FBN 093452
E-mail:  aseverino@bajocuva.com
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
(813) 443-2199 (telephone)
(813) 443-2193 (facsimile)
*Attorneys for Plaintiff*

22